# EXHIBIT B

## DECLARATION OF RICHARD HALDEMAN

Pursuant to 28 U.S.C. § 1746, I, Richard Haldeman, under penalty of perjury declare as follows:

1. I am over the age of 18 and a U.S. citizen. I make this Declaration supporting Plaintiffs' Complaint at Law and Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction to prevent further imminent and irreparable harm to Plaintiffs resulting from Defendants' unlawful and unauthorized actions.

2. I am the Chief Executive Officer of Detego Health, LLC ("Detego").

3. Detego is a Texas limited liability company specializing in providing healthcare plans for small businesses.

4. Detego is a third-party administrator and level-funded plan sponsor for its Detego Health plan. It is focused on small business health benefits, helping small businesses and their employees save on healthcare expenses.

5. As a third-party administrator, Detego Health offers a range of services including claims and benefits plan administration, benefit design and management, analytics, and performance analysis.

6. On January 28, 2024, Detego entered into a Master Services Agreement ("Agreement") with Engineering Innovation Group ("EIG") to govern the provision of services by EIG to Detego.

7. Attached to this Declaration is a true and correct copy of the Agreement between Detego and EIG. (Exhibit "A").

8. The Agreement was executed with the intent of fostering a collaborative relationship between Detego and EIG, with EIG providing specialized services to support Detego's business operations.

9. Under the Agreement, EIG was retained to perform specific services as outlined in one or more Statements of Work (SOWs). These services included, but were not limited to, the development of innovations, processes, and intellectual property for the benefit of Detego.

10. The Agreement explicitly established that all intellectual property developed by EIG within the scope of its work for Detego would be the sole and exclusive property of the Detego. This included any innovations, processes, or other proprietary developments created during the course of the engagement.

11. Notably, EIG agreed that it "does and will assign to [Detego], or [Detego's] designee, [EIG's] entire worldwide right, title and interest in and to all [Detego] Innovations and all associated records and intellectual property rights."

12. Further, per Section 5, EIG agreed that it "will not accept work, enter into a contract, or accept an obligation, inconsistent or incompatible with Agency's [EIG's] obligations, or the scope of services rendered for Company [Detego], under this Agreement. Agency [EIG] warrants that, to the best of Agency's [EIG's] knowledge, there is no other contract or duty on the part of Agency [EIG] that conflicts with or is inconsistent with this Agreement. This paragraph 5 does not prevent Agency [EIG] from performing the same or similar services for clients other than Company [Detego] so long as such services do not directly conflict with Agency's [EIG's] obligations under this Agreement."

13. The Agreement also contained robust confidentiality provisions. Section 4.2 of the Agreement defined "Confidential Information" broadly to include technical and non-technical

information, trade secrets, intellectual property, and other proprietary information related to the Detego's business. EIG was obligated to maintain the confidentiality of such information and to use it solely for the purpose of performing services for Detego.

14. Additionally, the Agreement included a "No Conflict of Interest" clause in Section 5, which prohibited EIG from engaging in any work or obligations that would conflict with its duties under the Agreement. This provision was designed to ensure that EIG's actions would not undermine Detego's business interests.

15. The Agreement further contained a "Noninterference with Business" clause in Section 8, which prohibited EIG from interfering with Detego's business operations during the term of the Agreement and for one year following its termination. This provision was intended to protect the Detego's relationships with its employees, contractors, and customers.

16. In reliance on the Agreement, Detego provided EIG with access to its confidential information, intellectual property, and other proprietary materials necessary for the performance of services. EIG also developed proprietary innovations and processes for Detego during the course of the engagement.

17. Subsequently, on March 16, 2025, the parties executed a SOW titled "Detego Health Salesforce Replatform & Roxie AI Implementation" ("SOW"), wherein EIG agreed to upgrade Detego's Salesforce infrastructure by incorporating EIG's Roxie AI automation technology. This upgrade aimed to accelerate claims processing, reduce call center wait times, and improve the auto-adjudication of claims (the "Project").

18. Attached hereto is a true and correct copy of the March 16, 2025 SOW. (Exhibit "B")

19. The SOW established a Team Allocation and Hourly Billing Structure that designated specific project leaders and included a six-month phased budget and billing plan.

20. Following execution of the SOW, EIG CEO Jake Miller disclosed to Detego that EIG was experiencing significant financial difficulties, including the inability to meet payroll obligations necessary to adequately pay staff and deploy the Roxie AI solution.

21. In response to Miller's disclosure, Detego and EIG reached a separate agreement under which Detego agreed to cover EIG's payroll expenses for the duration of the SOW.

22. In return for Detego's assumption of these financial obligations, Jake Miller agreed that EIG would separate Roxie AI from EIG so that it would become part of a new company that would be subsumed into Detego's business operations.

23. In accordance with this agreement, Detego paid EIG $170,000.00 so that it could meet its payroll obligations.

24. Subsequent to the agreements entered into by the parties described above, on or about June 16, 2025, Alan Wilson, the President and Chief Legal Officer of Detego Health, LLC, and I had a conversation with Jake Miller, wherein we were advised that EIG agreed to terms to sell EIG to TrueTech, an India-based company.

25. On June 26, 2025, Detego received correspondence from Bose, McKinney & Evans, LLP, attorneys for EIG. The letter advised that "due to recent and significant financial challenges, EIG has determined that it is necessary to cease its business operations, effective as of Monday, June 30, 2025." (See Correspondence dated June 26, 2025, attached hereto as Exhibit "C").

26. The letter further stated that "EIG recommends that Detego consider engaging TrueTech Solutions ("TrueTech"), under the leadership of Naren Vijayakumar, to assist with

transition support and the maintenance of existing platforms. EIG is willing to facilitate an introduction, and TrueTech has conveyed a willingness to begin onboarding promptly."

27. As such, on June 26, 2025 I became aware that EIG is ceasing its business operations, effective as of June 30, 2025 and as a result, EIG will be unable to continue performing its contractual obligations to Detego beyond that date.

28. On June 26, 2025 I also learned that after June 30, 2025, EIG will not share with Detego any proprietary code associated with the Roxie AI platform, despite its inclusion of Detego's confidential information, intellectual property, and other proprietary materials, and contrary to Detego's agreement with EIG and Jake Miller.

29. Based on the June 16, 2025 conversation, and June 26, 2025 correspondence, and upon information and belief, while EIG has agreed to sell its business operations to TrueTech, Jake Miller and Eric Tobias are separating Roxie AI from EIG and forming a new company that is funded by Eric Tobias but will not be subsumed into Detego's business operations.

30. This sale and separation of Roxie AI raise significant concerns regarding the potential exposure of Detego's confidential information and intellectual property to unauthorized third parties. Such exposure would constitute a breach of the confidentiality provisions of the Agreement and would result in irreparable harm to Detego.

31. The separation of Roxie AI into a new company formed by Jake Miller and Eric Tobias but not subsumed into Detego's business operations is contrary to the agreement reached when Detego agreed to meet EIG's payroll obligations.

32. The proposed sale also threatens to disrupt the ongoing services being provided by EIG to Detego, which are critical to Detego's business operations.

33. This disruption would violate the terms of the Agreement, including the "No Conflict of Interest" and "Noninterference with Business" provisions.

34. As of this date, EIG has failed to deliver and/or develop, among others, the following deliverables promised under the Agreement: AI-Driven Claims Adjudication & Process Automation; deployment of Roxie AI to automate claims adjudication, document indexing, and duplicate claim detection; implementation of intelligent queue prioritization based on complexity, urgency, and claim type; integration of policy-driven decision0making for auto-adjudication rules and real-time claim status tracking; automated prior authorization workflows to reduce processing delays and manual effort; customer service automation via Roxy AI for real-time status inquiries, claim tracking, and provider communications; multi-channel support (chat, email, SMS, mobile push notifications) for members and providers; deployment of a self-service portal and mobile application features to allow members to check claim status, submit documents, and receive automated updates; implementation of a secure provider web form for document submissions and case tracking; Development of a real-time COB verification system leveraging member input and external eligibility data sources; Optional integration with third-party verification services (e.g., Experian Health) for automated coverage discovery; design and implement intelligent work distribution and queue management to balance workloads dynamically; role-based workload prioritization and assignment models for adjudicators, customer service agents, and claims processors; and automated real-time reporting and dashboards to track claim processing efficiency, customer service performance, and error reduction.

35. Detego has made good faith efforts to address these concerns with EIG, Jake Miller, and Eric Tobias, but has been unable to obtain adequate assurances that its confidential information and intellectual property will be protected or that the ongoing services will not be disrupted. As a

result, Detego has been forced to seek judicial intervention to prevent not only the sale and transfer of EIG's business and to protect its rights under the Agreement, but also the separation of Roxie AI from EIG.

36. Detego will suffer imminent and irreparable harm without the restraining order against EIG, Jake Miller, and Eric Tobias, including loss of business relationships, damage to reputation, and dilution of intellectual property value, which cannot be compensated by monetary damages alone.

37. The Roxie AI platform's unique capabilities cannot be replicated or replaced by other available technologies. Its loss will adversely affect Detego's claims processing, call center wait times, and adjudication of claims resulting in damages that cannot be quantified.

38. In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

**FURTHER AFFIANT SAYETH NAUGHT…**

Executed on the 1st day of July, 2025.

*/s/ Richard Haldeman*
Richard Haldeman